**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **NELLINA L. LOFTON-TAYLOR,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CIVIL ACTION NO. 05-0532-CG-B** |
| ) | |
| **VERIZON WIRELESS,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on the motion and brief in support of defendant, Verizon

Wireless, for summary judgment (Docs. 93, 94), plaintiff's response (Docs. 97, 98), defendant's

reply (Doc. 102), and defendant's motion to strike (Doc. 101).  The court finds that plaintiff does

not have standing to assert a claim under 15 U.S.C. § 1681s-2(a) and has neither stated nor

supported a claim under 15 U.S.C. § 1681s-2(b) against Verizon Wireless.  The court further

finds that all of plaintiff's state law claims are preempted by the Fair Credit Reporting Act.

Therefore, the court finds that defendant's motion for summary judgment is due to be granted

and defendant's motion to strike is moot.

**FACTS**

The complaint in this case alleges that defendant Verizon Wireless ("Verizon") reported

to credit reporting agencies adverse information regarding a check written by plaintiff.  The

complaint asserts claims for (1) violation of the Fair Credit Reporting Act, (2) libel and slander,

and (3) invasion of privacy.  Three credit reporting agencies were named as defendants in this

case, but have been dismissed by agreement of the parties. (Docs. 74, 84, 88).  Verizon Wireless

1

is the only remaining defendant.

On September 19, 2003, plaintiff's husband, Kilpatrick Ray Taylor, telephoned plaintiff and asked her to come to the Verizon store on Airport and McGregor in Mobile, Alabama, to help him get cellular service. (Pl. Depo. p. 47).  Plaintiff arrived at the store and told her husband that she would not help him get a joint account because she was not going to sign for a phone that she was not using on a daily basis. (Pl. Depo. pp. 49, 51).  Later, a little after noon, plaintiff received another call from her husband asking her to go to the wireless store and pay his deposit, so he could have service on his phone. (Pl. Depo. pp. 49, 50, 51, 52).  Plaintiff's husband told her he needed a deposit of $165 paid. (Pl. Depo. p. 52).  Plaintiff arrived at the Verizon store and told an employee that she was there to pay her husband's deposit. (Pl. Depo. p. 54).  Plaintiff wrote the telephone number her husband had just called her from on a check and submitted the check in the amount of $165 to Verizon's store in Mobile, Alabama. (Pl. Depo. p. 53, 54, 57-58).  Plaintiff did not tell them who she was, ask for any paperwork, or request any information from Verizon, but just stated that she wanted to pay this amount on her husband's cell phone and that the number was on the check. (Pl. Depo. pp. 58-59).   The check was already made out before she entered the store. (Pl. Depo. p. 59).  The Verizon employee responded by saying "okay." (Pl. Depo. pp. 54, 59).

Verizon had an account for the number written on plaintiff's check, but it was not for plaintiff's husband.  The account for that number was under the name of Katrina Broughton. Broughton is a friend of plaintiff's husband. (Pl. Depo. p. 144).

At about 3:00 o'clock that same afternoon, plaintiff received another call from her husband asking why she had not paid the bill. (Pl. Depo. pp. 50, 60).  Plaintiff called the Verizon

store and told them she had paid on the wrong bill and needed to get her check back. (Pl. Depo. p. 62). Later that day, plaintiff called the bank to stop payment on the check. (Pl. Depo. pp. 63-64). She was told she had nine days to come in and sign the paperwork for the stop payment order and she did so within nine days. (Pl. Depo. p. 64). Per plaintiff's instructions, the bank stopped payment on the check. (Pl. Depo. p. 65).

The complaint alleges that Verizon Wireless reported to credit reporting agencies, Certegy Check Services, Inc., Equifax Credit Information Services, Experian and TransUnion, adverse information concerning plaintiff's check payment and cancellation of the check to Verizon Wireless.

Plaintiff has never been specifically told that her credit was denied because of the $165 check to Verizon. (Pl. Depo. p. 118). She has been denied credit for the information listed in her credit file. (Pl. Depo. p. 118). Plaintiff admits to having had more than 10 overdrafts on her bank account since it was opened in 1990. (Pl. Depo. pp. 64-65). She had an account with Fidelity Federal Bank that was placed in collection, but she has since paid it off. (Pl. Depo. pp. 118-119). Plaintiff also had an account with Ford Motor Credit that was charged off in the amount of $16,021.00. (Pl. Depo. p. 119). Plaintiff's credit report from Experian shows four tax liens totaling over $12,000.00. The Experian credit report also reports that plaintiff has an account with CBCS that was place in collection in January 2006 and that she had an account with GEMB/Dillards in which $822.00 was written off in February 2005. The Experian credit report does not have an entry of any kind for Verizon Wireless.

According to plaintiff, she wrote a check on February 18, 2004, in the amount of $589 to Dooney & Burke Inc. that was returned with a letter indicating the return was due to a Code 1

assessment from Certegy Check Services. (Pl. Affid. ¶ 4).  Plaintiff also reports that on April 25,

2004, she tendered a check to K-Mart in the amount of $37.90 that was declined after being

scanned by the store. (Pl. Affid ¶ 5).  The returned check had a phone number for Certegy Check

services printed on the back to call for more information. (Pl. Affid. ¶ 5).  Plaintiff reports that

she called the number and was told that she needed to pay a $165 check she had written to

Verizon Wireless. (Pl. Affid ¶ 5).   On April 26, 2004, plaintiff wrote a letter to Verizon Wireless

requesting that it remove all negative matters concerning the $165 check from her records. (Pl.

Affid ¶ 5).

Plaintiff also reports that on May 3, 2004, while shopping at K-Mart her check in the

amount of $41.45 was declined and the same Certegy Check Services number was printed on the

back. ((Pl. Affid ¶ 6).

Certegy Check Services, Inc. ("Certegy") has an agreement with Verizon Wireless under

which Verizon electronically transmits check information to Certegy at the time the check is

presented to request authorization from Certegy for warranty coverage.  When an approval is

initially given, but the check is subsequently returned, Verizon submits the check to Certegy for

payment as a warranty claim.  Certegy then pays the full amount of the check and begins the

collection process with the checkwriter. (Wood Affid. ¶¶ 3-4).  Certegy's records contain a photo

of the original check "for payment as a warranty claim". (Wood Affid. ¶ 5).  Certegy has not

reported any information to Equifax Credit Information Services, Experian or Trans Union

regarding a claim for the Verizon check written by plaintiff.  (Wood Affid. ¶ 6).

4

**LEGAL ANALYSIS**

**I. Motion to Strike**

Defendant seeks to strike the affidavits of plaintiff and Katrina Broughton, submitted by plaintiff in support of her opposition to the motion for summary judgment.  The court finds that the affidavits are not material to the court's determination, as the result would be the same if the affidavits were not considered by the court.  Therefore, the court finds that the motion to strike is **MOOT**.

**II. Motion for Summary Judgment**

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists.

5

O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999).   "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## B. Fair Credit Reporting Act

"The FCRA reflects Congress's concern with the 'need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the

consumer's right to privacy.'"Yang v. Government Employees Ins. Co., 146 F.3d 1320, 1322 (11th Cir. 1998) (quoting 15 U.S.C.A. § 1681(a)(4)).  Plaintiff does not specify in the complaint which provision of the FCRA she contends Verizon has violated.  Verizon clearly does not constitute a consumer reporting agency,[1] but instead is a "furnisher of information."  "In 1996, Congress amended the FCRA to impose duties upon persons who furnish information to credit reporting agencies . . . .  See 15 U.S.C. § 1681s-2.  Prior to these amendments, the FCRA did not impose any duties on those furnishing information to credit reporting agencies." Ryan v. Trans Union Corp., 2000 WL 1100440, *1 (N.D. Ill. 2000).

Plaintiff claims that Verizon violated the FCRA by reporting adverse information to others.  Verizon asserts that there has been no violation of the FCRA because the plaintiff has not demonstrated that Verizon made any report to anyone about any credit information of or about the plaintiff.  However, assuming Certegy constitutes a consumer reporting agency under FCRA, there is evidence that Verizon applied for warranty coverage from Certegy for nonpayment of plaintiff's check.  The affidavit of Certegy's employee, Mary Wood, states that their records contained a photo of the check "for payment as a warranty claim."  While defendant appears to contend that the above statement means it was presented for warranty coverage when it was initially submitted to Verizon, the court, viewing the facts in the light most favorable to plaintiff, understands the statement to mean that when the check was denied, Verizon made a claim on Certegy's warranty seeking payment from Certegy for the $165.  Thus, there is

---

[1] The Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), defines "consumer reporting agency" as follows:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

evidence that Verizon reported to Certegy that plaintiff's $165 check was "no good."[2]

Defendant further asserts that neither Verizon, nor Certegy reported any information to Equifax, Experian, or Trans Union.  However, Verizon did report information to Certegy.  A report from a check approval company is a consumer report under § 1681a(d)[3].  See Estiverne v. Sak's Fifth Avenue,  9 F.3d 1171, 1173-74 (5th Cir. 1993) (citations omitted).  Thus, there is evidence that Verizon furnished information to a consumer reporting agency.

Defendant also contends that plaintiff has no standing to prosecute this action under § 1681s-2(a) of the FCRA.   The court agrees that the FCRA does not provide a federal private right of action under § 1681s-2(a).  See § 1681s-2(c)(1) ("··· sections 1681n and 1681o of this title do not apply to any violation of-(1) subsection (a) of this section, including any regulations issued thereunder . . .·").  Courts have routinely held that § 1681s-2(a) may be enforced only by the government as provided in the statute even though it creates an affirmative obligation to

---

[2] The court notes that the parties dispute whether the information furnished was accurate. Although plaintiff had in fact stopped payment on the check, plaintiff had no account with Verizon and owed no money to Verizon.  The court also notes that whether or not the information reported was accurate is irrelevant as to any liability under certain portions of the FCRA.  Section 1681s-2(b) duties exist regardless of whether the disputed information is later determined to be accurate.  A substantive investigation is required irrespective of accuracy. Abbett v. Bank of America,  2006 WL 581193, *4 (M.D. Ala.  March 8, 2006).

[3] "Consumer report" is defined in the FCRA as follows:

The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
    (A) credit or insurance to be used primarily for personal, family, or household purposes;
    (B) employment purposes; or
    (C) any other purpose authorized under section 1681b of this title.

15 U.S.C.A. § 1681a(d).  The FCRA contains some  exclusions and restrictions to the above definition which are not applicable here.

refrain from reporting inaccurate information. See Riley v. General Motors Acceptance Corp., 226 F.Supp.2d 1316, 1319 (S.D. Ala. 2002) ("Thus, because he is not the Attorney General of Alabama or an appropriate federal official, the plaintiff has no standing to allege claims under 1681s-2(a)") (citations omitted); see also Abbett v. Bank of America, 2006 WL 581193, *5 (M.D. Ala. March 8, 2006); Acosta v. Campbell, 2006 WL 146208, *13 (M.D. Fla. January 18, 2006). Therefore, plaintiff lacks standing to pursue any claim under § 1681s-2(a).

However, plaintiff's complaint did not specify under which section of the FCRA her claims arise. Plaintiff alleges only that defendant's "reporting of adverse information" violated the FCRA. The only provision under which plaintiff could allege a private right of action against Verizon, as a furnisher of information, is § 1681s-2(b). See Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059-60 (9th Cir. 2002) (Through § 1681n and § 1681o, the FCRA provides a private right of action for violations of § 1681s-2(b).).

Section 1681s-2(b) requires that, upon receipt of a notice of dispute from a credit reporting agency, a furnisher of information is required to conduct an investigation, review relevant information provided by the credit reporting agency, report the results of the investigation, and, in the event the investigation determines that the information is either incomplete or inaccurate, report those results to all agencies to whom the furnisher reports such information. 15 U.S.C. § 1681s-2(b)(1)(A)-(D). A prerequisite for a claim under § 1681s-2(b) is that Verizon, as the furnisher of information, received notice of a dispute from Certegy. See 15 U.S.C. §§ 1681i, 1681s-2(b). Plaintiff has presented no direct evidence that Certegy notified Verizon of a dispute. Plaintiff reports calling Certegy after her $37.90 check to K-Mart was declined, but that was not until at least April 25, 2004. Pursuant to §1681i, Certegy then had five business days to notify Verizon.15 U.S.C. § 1681i-a(2)(A). A reasonable reinvestigation and recording of the current status of the disputed information or deletion of the item from the file should occur within 30 days from receipt of the notice from the consumer. 15 U.S.C. § 1681i-a(1)(A). Plaintiff only provided evidence of one check, subsequent to her call to Certegy, that

was declined.  However, that check declination occurred on May 3, 2004, only 8 days after plaintiff's call to Certegy.  Verizon's duty to investigate and then report results to Certegy would not arise until it receives such notice of the dispute from Certegy.  See Abbett,  2006 WL 581193 at *3 ("To prevail on a § 1681s-2(b) claim, Mr. Abbett must show that a CRA notified the furnisher of information about the consumer's dispute pursuant to § 1681i(a)(2). This notice triggers the furnisher's duties under § 1681s-2(b)."); Young v. Equifax Credit Info. Serv., 294 F.3d 631, 639 (5th Cir.2002) (duty arises only after receiving notice of a dispute from a credit reporting agency).  Moreover, plaintiff does not indicate whether she informed Certegy when she called that she disputed the information.  Notably, plaintiff did not allege in her complaint that Certegy notified Verizon of the dispute or that Verizon failed to investigate the dispute or report its findings to Certegy.  In addition, plaintiff argues in her response with regard to the issue of preemption that "at no time did Certegy notify Verizon Wireless that Plaintiff disputed Verizon Wireless' claim against her." (Doc. 98, p. 6).

The court finds that the factual evidence is insufficient for a reasonable juror to find that plaintiff's injuries resulted from Verizon's failure to investigate and report the results after receiving notification from Certegy of a dispute.  Thus, the court finds that summary judgment should be granted in favor of defendant as to plaintiff's FCRA claim.  See Acosta v. Campbell, 2006 WL 146208, at *13 n 12 ("Although Acosta could bring a private action under § 1681s-2(b), which imposes additional duties once the furnisher of information receives notice of the consumer's dispute from a credit reporting agency, he has not alleged that he contacted the credit reporting agencies to dispute the foreclosure, or that the credit reporting agencies notified CitiMortgage that Acosta was disputing the debt.")

**C. State Law Claims**

Counts Two and Three of plaintiff's complaint assert claims for libel, slander and invasion of privacy.  Defendant argues that all of plaintiff's state law claims are preempted under the FCRA.  The FCRA contains express preemption provisions: 15 U.S.C. §§ 1681t(a) and

1681t(b)(1)(F).  Section 1681t(a) provides the following:

> (a) In general
> Except as provided in subsections (b) and (c) of this section, this subchapter does
> not annul, alter, affect, or exempt any person subject to the provisions of this
> subchapter from complying with the laws of any State with respect to the
> collection, distribution, or use of any information on consumers, except to the
> extent that those laws are inconsistent with any provision of this subchapter, and
> then only to the extent of the inconsistency.

Section 1681t(b)(1)(F) provides:

> (b) General exceptions
> No requirement or prohibition may be imposed under the laws of any State--
> (1) with respect to any subject matter regulated under--
> > (F) section 1681s-2 of this title, relating to the responsibilities of persons
> > who furnish information to consumer reporting agencies, except that this
> > paragraph shall not apply [to two statutory exemptions concerning
> > Massachusetts and California].

The Middle District of Alabama recently stated that the above preemption provision mandates "compliance with state laws with two exceptions: (1) where state laws are inconsistent with the FCRA; and (2) where a State has imposed a requirement or prohibition on furnishers of information to [credit reporting agencies.]" Abbett, 2006 WL 581193 at *5.  The Middle District of Alabama therefore concluded that because there is no private right of action against furnishers of information for making inaccurate reports,  "[a]llowing any private state law action to proceed against a furnisher of information based on violations of duties established by § 1681s-2(a) is inconsistent with the FCRA." Id.   This court adopts that analysis, and finds that all of plaintiff's state law claims in the instant case are preempted to the extent they are based on the furnishing of inaccurate information.[4]

The Middle District of Alabama's conclusion in Abbet is consistent with this court's

---

[4] The court found above that plaintiff has failed to support a claim under § 1681s-2(b) for Verizon's failure to investigate and report the results after receiving notification from Certegy of a dispute.  Moreover, the allegations of plaintiff's state law claims are based on duties established by § 1681s-2(a), rather than § 1681s-2(b).  Both counts Two and Three state that the claim is based on the "reporting of adverse information against Plaintiff's credit report, knowing that Plaintiff owed no debt and never had an account with Verizon Wireless." (Complaint ¶¶ 25, 28).

previous ruling in Riley:

> The court finds no reported authority confronting the first issue before this court:
> an allegation that violations of § 1681s-2(a) form the basis for state law
> "negligence per se or intentional tort, per se" claims.  Either no federal court has
> confronted a similarly pled complaint or the proposition is so fundamental that no
> court has bothered to publish on the issue.  In any case, this court holds that where
> the plaintiff has no private cause of action under § 1681s-2(a), the plaintiff cannot
> allege violations of 1681s-2(a) as the basis for state law claims.

Riley, 226 F.Supp.2d at 1320.[5]

Plaintiff argues that § 1681t(b)(1)(F) does not apply to this case, but instead that the older

provision, § 1681h(e) applies.  The older provision states the following:

> (e) Limitation of liability
> Except as provided in sections 1681n and 1681o of this title, no consumer may
> bring any action or proceeding in the nature of defamation, invasion of privacy, or
> negligence with respect to the reporting of information against any consumer
> reporting agency, any user of information, or any person who furnishes
> information to a consumer reporting agency, based on information disclosed
> pursuant to section 1681g, 1681h, or 1681m of this title, or based on information
> disclosed by a user of a consumer report to or for a consumer against whom the
> user has taken adverse action, based in whole or in part on the report except as to
> false information furnished with malice or willful intent to injure such consumer.

15 U.S.C.A. § 1681h(e).  The district courts within this circuit are split as to the application of

these two FCRA preemption statutes in cases such as this, and this court is aware of no Eleventh

Circuit analysis of this issue.  The Northern District of Alabama has explained the dichotomy

between these two provisions and the split of authority among courts concerning their

applicability as follows:

> The newer § 1681t(b)(1)(F) is broader than the older § 1681h(e) in that it
> preempts all state law claims that may arise from a person's furnishing of credit
> information to a consumer reporting agency, whereas 1681h(e) only preempts
> state law claims "in the nature of defamation, invasion of privacy, or negligence"

---

[5] In Riley, this court also addressed  whether § 1681t(b)(1)(F) preempted the plaintiff's
state law claims which were based on violations of duties established by § 1681s-2(b). Riley,
226 F.Supp.2d at 1320-25.  In fact, this court noted that the plaintiff in Riley only alleged
conduct by the defendants that occurred after defendant received notice from the credit reporting
agencies of a discrepancy. Id. at 1325.  This court held that the plaintiff's state law claims based
on the alleged furnishing of inaccurate information to credit reporting agencies in violation of 15
U.S.C. § 1681s-2(b) are completely preempted by 15 U.S.C. § 1681t(b)(1)(F). Id.

to the extent that such claims do not result from willful or malicious conduct. But the newer § 1681t(b)(1)(F) is also more narrow than the older § 1681h(e) in that the protections of the newer § 1681t(b)(1)(F) are not triggered until after a furnisher is notified by a consumer reporting agency of a consumer's dispute, whereas the older § 1681h(e) protections are available at all times. See infra at n. 1-3. In other words, the protection of § 1681t(b)(1)(F) is limited by § 1681s-2(b)(1) which sets forth the duties of a furnisher of credit information. This cumbersome overlap of the newer § 1681t(b)(1)(F) and the older § 1681h(e) has resulted in disagreement among courts about how best to harmonize the two in application. Riley v. Gen. Motors Acceptance Corp., 226 F.Supp.2d 1316, 1324 (S.D.Ala.2002) (discussing the various approaches to analyzing the two provisions).

       The courts that have wrestled with the issue at bar have reached differing results. Some have concluded, as defendant urges this court to conclude, that there is complete preemption of state law claims. In other words, these courts hold that the newer language (§ 1681t(b)(1)(F)) supercedes the older (§ 1681h(e)) altogether, and thus all state law causes of action relating to the duties of persons who furnish information to consumer credit reporting agencies are preempted by the newer § 1681t(b)(1)(F). See, e.g., Purcell v. Universal Bank, N.A., 2003 WL 1962376, *5 (E.D.Pa. April 28, 2003); Hasvold v. First USA Bank, N.A., 194 F.Supp.2d 1228, 1239 (D.Wyo.2002); Jaramillo v. Experian Info. Solutions, Inc., 155 F.Supp.2d 356, 361-62 (E.D.Pa.2001); Carney v. Experian Info. Solutions, Inc., 57 F.Supp.2d 496, 503 (W.D.Tenn.1999). According to these courts, no state law tort claims relating to the furnishing of information to a consumer reporting agency are ever permissible, regardless of whether the claims involve conduct before or after the furnisher of information received notice of a dispute from a consumer reporting agency.

       Other courts have held that the newer § 1681t(b)(1)(F) preemption provision is more limited in scope. Relying on the plain language of the statute, these courts hold that state law tort claims are preempted by the newer § 1681t(b)(1)(F) only if they involve conduct by the furnisher of credit information after that furnisher was made aware that the information was false or disputed by a consumer reporting agency. See, e.g., Stafford v. Cross Country Bank, 262 F.Supp.2d 776 (W.D.Ky.2003); Aklagi v. NationsCredit Fin. Serv. Corp., 196 F.Supp.2d 1186, 1194-95 (D.Kan.2002); see also Riley, 226 F.Supp.2d at 1324.

Woltersdorf v. Pentagon Federal Credit Union, 320 F.Supp.2d 1222, 1224-25 (N.D. Ala. 2004)

(footnotes omitted).   The Northern District of Alabama followed the second line of reasoning,

finding that "the absolute bar of the newer § 1681t(b)(1)(F) applies only after a consumer

reporting agency notifies the furnisher of credit information of a consumer dispute." Id. at 1226.

     After considering the relevant case law, the court is persuaded by the Middle District of

Alabama's analysis and by this court's prior findings in Riley that allowing any private state law

action to proceed against defendant based on violations of duties established by § 1681s-2(a) is

inconsistent with the FCRA.   Accordingly, the court holds that all of plaintiff's state law claims are preempted because they are based on the allegation that defendant furnished inaccurate information to Certegy.

## CONCLUSION

For the reasons stated above, the motion of Verizon Wireless for summary judgment (Docs. 93, 94) is **GRANTED**, and the motion of Verizon Wireless to strike (Doc. 101) is **MOOT**.

**DONE** and **ORDERED** this 14th day of November, 2006.

    /s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE